IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| FOUR WINDS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN EXPRESS TAX AND )<br>CONSULTING SERVICES, INC. and )<br>SCOTT PELTZ, )<br>)<br>Defendants. )<br>-------------------------------------------------------<br>AMERICAN EXPRESS TAX AND )<br>BUSINESS SERVICES, INC., )<br>)<br>Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>BANK ONE, N.A., )<br>)<br>Third-Party Defendant. ) | No. 2:02 CV 368 PS |

**OPINION AND ORDER**

When Bank One sued Four Winds LLC to foreclose on a mortgage relating to the doomed construction of an apartment complex, a receiver was needed to protect the partially completed project while the foreclosure action was pending. Four Winds and Bank One agreed that defendants American Express Tax and Consulting Services, Inc. and Scott Peltz (collectively "Am Ex") would serve as the receiver. While the property was in receivership, it deteriorated to such an extent that it was eventually condemned and ordered razed by a state court judge. Four Winds settled with Bank One for a substantial amount of money and then sued Am Ex to boot. Am Ex, in turn, filed a third-party action against Bank One which is presently before the Court.

This matter is before the Court on Bank One's Motion for Summary Judgment. [Doc. 101]. Am Ex's third-party complaint alleged a myriad of theories against Bank One, but the briefing on the summary judgment has substantially pared the case down. Therefore, we find that Am Ex waived four of its five third-party claims in response to summary judgment. As to the fifth claim, we find that Am Ex is unable to sustain a claim for negligence because it cannot demonstrate that Bank One owed it any duty. As such, Bank One's motion is **GRANTED**.

## BACKGROUND

A detailed history of the state court foreclosure action between Bank One and the Plaintiffs as well as the history of the Project is contained in this Court's September 18, 2006 Order [Doc. 128]. Accordingly, we will not revisit that history here. However, a brief overview of Bank One's relationship with Am Ex during the course of Am Ex's tenure as receiver is instructive.

**A.      Bank One Facilitates Am Ex's Appointment As Receiver**

In 1999, Bank One entered into a mortgage agreement (the "Construction Loan") with Four Winds to finance the construction of a multiple-building apartment complex on a tract of land in Lake County, Indiana (the "Project"). However, by February 2000, Bank One was concerned that the estimated costs to complete the Project exceeded the remaining nondisbursed proceeds of the Construction Loan by nearly $2.2 million and, therefore, demanded that Four Winds deposit the shortfall with Bank One before Bank One would make additional disbursements. Four Winds disputed Bank One's claims. Throughout most of the spring and summer of 2000, Bank One and Four Winds negotiated to attempt to resolve the problem.

In the meantime, Bank One explored its foreclosure options. As part of its investigation, Bank One determined that it would seek the appointment of a receiver for the Project as part of any foreclosure action to monitor the state of construction and maintain the status quo on the

Project.  To this end, in June 2000, Lawrence Rhum, the asset manager in Bank One's workout department, contacted Alan Samsky, a director at Am Ex, to determine whether Am Ex would be interested in serving as receiver.  On June 2, 2000, Rhum received a letter from Samsky and Scott Peltz, Am Ex's managing director, that confirmed Am Ex's interest in the project and set forth Am Ex's qualifications to serve as the receiver.  Rhum also had two phone conversations with Samsky in which Rhum specifically discussed with Am Ex that the Project was not complete and, therefore, would not be able to generate revenue to complete the Project.  However, Rhum also told Samsky that Bank One was prepared to pay for measures to monitor and maintain the Property while a foreclosure action was pending.

By Mid-August 2000, negotiations between Bank One and Four Winds regarding the Construction Loan shortfall had broken down and Bank One made the decision to move forward on its foreclosure action.  On August 21, 2000, Rhum and Samsky had another phone conversation in which Samsky confirmed that Am Ex would serve as the receiver if appointed by the Lake County Superior Court.  Rhum again reiterated that the Project could not generate funds to support the receivership because it was incomplete, but that Bank One would advance funds as necessary to pay for the receiver's maintenance and monitoring activities as well as various other out-of-pocket expenses.

On September 8, 2000, Bank One filed its foreclosure action against Four Winds in the Lake County Superior Court.  Bank One then had additional negotiations with Four Winds in which it sought Four Winds' agreement that Am Ex would be appointed as receiver.  According to Bank One, Four Winds' primary concern was that Am Ex not be allowed to complete construction on the Project.   Ultimately, the parties agreed on language which restricted (but did not prevent) Am Ex's ability to complete construction of the Project.

On September 28, 2000, the Lake County Superior Court entered a Stipulated and Agreed Order Appointing Receiver (the "Stipulated Order") that appointed Am Ex as the receiver. The Stipulated Order provided that:

> the receiver shall manage, operate, and make improvements on the Real Estate to the extent necessary to maintain, preserve and protect the Real Estate. American Express is directly authorized by the Court to do any and all acts it deems proper to maintain, protect and preserve the Real Estate during the pendency of this action, until such time as the Real Estate is sold by order of this Court or until further actions or orders of this Court.

(Stipulated Order at ¶ 1). The Stipulated Order further authorized the receiver to contract with a service or use its own employees to provide management or any other operations; to institute, carry on, and defend legal actions regarding the property; to pay expenses associated with the property, including utility and sewer charges, taxes, and assessments; and to obtain insurance for the property. (*Id*. at ¶¶ 1, 5, 6, 9).

Am Ex's powers under the Stipulated Order were not without limitation. For example, Am Ex was authorized to make minor repairs to the partially completed buildings, but could not make substantial improvement or repairs exceeding $5,000.00 without prior approval of the court. (*Id*. at ¶ 9). Moreover, Am Ex was "not authorized to take any steps toward or to continue construction on the Real Estate for the purpose of completing any improvements thereon *except as is necessary to maintain, preserve and protect the Real Estate*." (*Id*. at ¶ 1) (emphasis added). Paradoxically, Am Ex was directed to maintain separate bank accounts for all funds that the receivership received from the property and Am Ex was to use only receivership funds to maintain the property – Am Ex was not required to advance its own funds for any expenses relating to the Project. (*Id*. at ¶¶ 11, 12). Importantly, Am Ex could apply to the court to alter its powers under the Stipulated Order if necessary to enable Am Ex to execute its duties under the order. (Stipulated Order at ¶ 13).

**B.      Am Ex's Communications with Bank One During the Foreclosure Action**

After Am Ex accepted its appointment as the Receiver, it contacted Intercor, a general contractor, to inspect the Project and provide Am Ex with recommendations to secure the Property.   In early October 2000, Am Ex forwarded several documents to John Burns, Bank One's attorney.  These documents included a letter from Four Winds' managing partner which described measures that Four Winds proposed in order to protect the Project from the elements, a quote from VFP Fire Systems with the cost to drain the water from the sprinklers installed at the Project, and the Intercor quote.  Apparently, Bank One did not believe that the measures proposed by Intercor adequately protected the Project from the elements.  Bank One communicated its concerns to Am Ex and received a second quote from Intercor on October 20, 2000.  Bank One then approved the two Intercor quotes and the VFP quote.

It does not appear from the record before the Court that Bank One and Am Ex had much communication between October 2000 and June 2001.  On June 14, 2001, Burns received a letter from the Lake County, Indiana Building Department in which the Building Department advised Bank One that an inspection of the Project revealed unsafe conditions and significant deterioration.[1]   Bank One forwarded a copy of this letter to Peltz at Am Ex.

In July 2001, Am Ex informed Bank One that it had received another quote from Intercor to perform additional work at the Project to address the Building Department's concerns.  Bank One approved the Intercor quotes.

**C.      Relationships Between the Parties Break Down**

---

[1] The Building Department had previously inspected the Project in November 2000 and raised similar concerns about unsafe conditions.  However, upon learning that a receiver had been appointed to oversee the Project, it appears that the Building Department was temporarily appeased.

As early as August 2001, it is clear that Four Winds and Am Ex strongly disagreed on how Am Ex was handling the property.  First, Edward Mueller, a Four Winds Principal, filed a Motion for Rule to Show Cause asking that Am Ex be held in contempt of court for violating the Stipulated Order by failing to implement adequate protective measures.   At the time, Bank One did not believe that the motion was well taken because Am Ex's protective steps essentially mirrored the steps that Four Winds had proposed.  Burns conferred with David Jensen, Am Ex's attorney, and suggested a variety of ways in which Am Ex might oppose Four Winds' motion.  These proposed measures included Burns' suggestion that Am Ex apply to the Court for leave to sell the property.   Am Ex took this suggestion and filed a Motion for Leave to Sell Real Estate asking that they be allowed to sell the Project because it could not operate as an apartment complex and, therefore, Am Ex had no funds with which to maintain it.   Before the court could rule on those two motions, Four Winds filed a Motion for Leave to Sue the Receiver alleging that Am Ex had willfully, wantonly and negligently failed to take adequate measures to protect the Project. Here, too, Bank One supported Am Ex in its opposition to Four Winds' motion.  Ultimately, Magistrate Judge Pete denied all of the pending motions.

However, this was not the end of the story.  In February 2002, Four Winds filed a motion to reconsider its motion for leave to sue the receiver.[2]   Judge Diane Schneider of the Lake County Superior Court conducted an evidentiary hearing on the motion to reconsider over the course of two days in May and June 2002.   Judge Schneider overturned Magistrate Pete's decision and found that Four Winds had "presented sufficient evidence to show that there exists

---

[2]Apparently, the Court took no action on this motion and it was denied by operation of Indiana Law.  *See* Ind. Tr. R. 53.4.  Four Winds again renewed its motion to reconsider in April 2002 by filing an "additional application" for leave to sue the receiver.  However, the Lake County Superior Court did not distinguish between the February and April motions in its ruling on the April motion.

6

a reasonable probability that the Receiver committed gross negligence under the accepted definition of Indiana law." (Lake Co. August 20, 2002 order at 5). After receiving Judge Schneider's ruling, Four Winds brought this action against Am Ex in Lake County Superior Court.

Despite their initial cooperation in fighting Four Winds' various attacks on Am Ex, the relationship between Am Ex and Bank One took a turn for the worse in November 2002. At that time, Burns, Jensen and Peltz had a phone conversation during which Am Ex made statements to the effect that Bank One had "controlled" Am Ex's actions as receiver and that Bank One therefore had an implied obligation to indemnify Am Ex against any liability to Four Winds on its claims against Am Ex in the action. Am Ex's request for indemnification based on Bank One's "control" of it appears to have been posturing. This is because Peltz – Am Ex's point man as receiver – testified in a deposition during the state court matter that Bank One never told Am Ex not to undertake certain measures, did not interfere in Peltz's execution of his duties, and did not limit the way in which Am Ex carried out its duties. (Peltz Dep. at 40-41).

**D.     The Pending Litigation and the Third Party Complaint**

Am Ex removed this action to this Court on September 13, 2003. Four Winds filed its Amended Complaint on February 13, 2004, alleging gross negligence and fraud against Am Ex. Am Ex then filed a third-party complaint against Bank One in March 2004. After the present action was brought, Four Winds settled its state court lawsuit against Bank One for a hefty amount.

Am Ex asserts five separate claims against Bank One in its third-party complaint. First**,** Am Ex asserts that Bank One was negligent in its control of the receivership in that it authorized, directed, and approved all of Am Ex's activities as receiver. Second, Am Ex asserts that Bank One was negligent in that it never told Am Ex that Bank One had wrongfully commenced the

7

foreclosure action. Third, Am Ex asserts that Bank One owed Am Ex certain fiduciary duties which it breached by wrongfully commencing the foreclosure action. Fourth, Am Ex asserts that Bank One impliedly agreed to indemnify Am Ex for its actions as receiver by agreeing to pay for and authorizing all of the protective measures that Am Ex undertook on the Project. Fifth, and finally, Am Ex asserts that the November 2002 phone conversation between Burns and Jensen constituted an express indemnity agreement in which Burns acknowledged Am Ex's demand and agreed to undertake such a demand.

## II.  DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d 1002, 1004 (7th Cir. 2000); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 458 (7th Cir. 1999). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). When examining the evidence, the Court should resolve all ambiguities and draw all inferences in favor of the non-moving party. *Haefling v. United Parcel Serv., Inc.,* 169 F.3d 494, 497 (7th Cir. 1999); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1453 (7th Cir. 1994).

**A.     Waived Claims**

As an initial matter, we note that Am Ex has abandoned at least three of its claims in response to summary judgment. Nowhere in its response briefing does Am Ex address its claims for breach of fiduciary duty, implied indemnity, or express indemnity. Accordingly, Am Ex has waived these claims. *See Ienco v. Angarone*, 429 F.3d 680, 684 (7th Cir. 2005) (finding that

8

plaintiff waived claims where he failed to develop them in response to defendant's motion for summary judgment.); *Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (same).

**B.     Negligence Claims**

Am Ex's barebones response leaves the Court with the question of what, if anything, is left of Am Ex's Third Party Complaint. The answer is very little, and that which is left is not sustainable under Indiana law.

Am Ex does little to develop its negligence claims in its response to Bank One's motion. Local Rule 56.1 requires a summary judgment respondent to file a statement of genuine issues "setting forth with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issues necessary to litigated." *Id.* Nowhere in its response does Am Ex set forth any material fact at issue. Instead, it raises two theoretical questions loosely linked to issues of negligence. These issues include:

> 1. Whether Bank One is a joint tortfeasor who caused or contributed to cause the damages of which Four Winds complains in this case; and
>
> 2. Whether the degree to which Bank One's conduct proximately caused or contributed to cause the damages alleged by Four Winds is an issue of fact which must be determined by the trier of fact.

(Am Ex. Resp. at 1) (numbering added). We fail to understand how these theoretical questions pertain to the negligence claims that Am Ex set forth in its third party complaint.

As its first claim, Am Ex alleged that Bank One was negligent because it somehow controlled Am Ex's actions as the receiver and as its second claim, Am Ex alleged that Bank One was negligent because it failed to inform Am Ex that Bank One was not entitled to bring the foreclosure action against Four Winds. In its response to summary judgment, however, Am Ex does not address either of these allegations directly, but, instead, argues that Bank One was

9

negligent in bringing the foreclosure action and in agreeing to the Stipulated Order which Am Ex contends prevented it from completing construction on the Project. Thus, Am Ex argues, Bank One caused or contributed to Four Winds' damages. This may be the case. However, Bank One's actions as they relate to Four Winds does not provide Am Ex with a cause of action for negligence against Bank One.

To demonstrate negligence under Indiana law, Am Ex must demonstrate that Bank One owed Am Ex a duty, that Bank One breached that duty, and that Bank One's breach of that duty proximately caused Am Ex's injuries. *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 294 (7th Cir. 1996). Am Ex cannot meet this standard because there is no proof that Bank One owed any duty to Am Ex nor is there any evidence that Bank One breached any such duty.

The Court cannot conceive of what duty Am Ex believes that Bank One owed to it. As Bank One correctly notes, the duties inherent in a receivership flow from the receiver to the parties, not the other way around. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991). Thus, the existence of the receivership relationship between Am Ex, Bank One, and Four Winds does not instill any duty upon Bank One. Moreover, Am Ex has not even attempted to identify some other, independent "duty" that it alleges Bank One breached.

Even if we were to find that Bank One somehow owed a duty to Am Ex as the receiver to only bring a foreclosure action in good faith, there is no evidence that Bank One breached that duty, at least insofar as it pertains to Am Ex. While Bank One ultimately lost its foreclosure action in the Lake County Superior Court, there is no evidence that Bank One knew at the time that it filed the foreclosure complaint and brought Am Ex into the mix as receiver that its foreclosure action was improper or not sustainable. To the contrary, Bank One vigorously prosecuted its foreclosure claims and defended against Four Winds' counterclaims up until the point where it was in Bank One's best interests to settle the matter.

Although Am Ex's response does not support its claim for negligence against Bank One, it does appear to represent an attempt to change course mid-stream and recast its third-party complaint as a claim for contribution.  However, this, too, must fail.

Am Ex repeatedly characterizes Bank One as a joint tortfeasor with American Express. As such, it appears that Am Ex is actually attempting to assert an action for contribution. However, Indiana law is clear that there can be no action for contribution among joint tortfeasors.  I.C. §34-51-2-12.  Thus, while Am Ex may be correct that Bank One's actions contributed to Four Winds' damages, its third-party action for contribution is prohibited under Indiana law.

Indiana law does provide, however, a mechanism for apportioning fault among joint tortfeasors – even where the plaintiff has failed to name one of the alleged tortfeasors as a party to the action.  The Indiana Code provides:

> In an action based on fault, a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a nonparty.  This defense is referred to in this chapter as a nonparty defense.

I.C. § 34-51-2-14.   Am Ex asserted the nonparty defense in its answer to Four Winds' Amended Complaint and claimed that Bank One caused Four Winds' injuries.  (*See* [Doc. 64]). Accordingly, the jury may still consider whether Bank One's actions caused or contributed to Four Winds' damages for purposes of apportioning fault at trial.  However, this nonparty defense does not create any independent action which Am Ex may sustain against Bank One.

### III.  CONCLUSION

For the reasons stated above, Bank One's Motion for Summary Judgment [Doc. 101] is **GRANTED**.   This action remains pending as to the claims between Am Ex and Four Winds.


**SO ORDERED.**

ENTERED: October 16, 2006

S/  Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
